

U.S. Department of Justice

United States Attorney
Eastern District of New York

DCP:GSM/PJC  
F. #2021R00254

271 Cadman Plaza East  
Brooklyn, New York 11201

November 22, 2022

**<u>FILED PARTIALLY UNDER SEAL</u>**

<u>By Hand and ECF</u>

The Honorable Raymond J. Dearie  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    <u>United States v. Orlando Sanay</u>  
                <u>Criminal Docket No. 21-496 (RJD)</u>

Dear Judge Dearie:

      The government respectfully submits this letter in advance of the defendant Orlando Sanay's sentencing in the above-referenced matter, which is currently scheduled for November 29, 2022. The defendant has pleaded guilty to conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. As set forth below, a sentence within the U.S. Sentencing Guidelines ("Guidelines") range of 15 to 21 months contemplated in the defendant's plea agreement would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

I.    <u>Background</u>

      Between April and August 2020, the defendant submitted three fraudulent applications for, and subsequently fraudulently obtained, Economic Injury Disaster Relief Program loans ("EIDL") on behalf of three entities he controlled: (i) Innovation Transport LLC ("Innovation"), which was co-owned with co-conspirator Ramon Pena; (ii) Sanay Venture Capital LLC ("SVC") and (iii) Orlando Sanay, a sole proprietorship. <u>See</u> Presentence Investigation Report ("PSR") ¶¶ 15-23. The defendant carried out this scheme as part of a broader conspiracy that fraudulently obtained nearly $1.5 million in EIDL funds. <u>See id.</u> ¶ 7.

        A.    <u>The Economic Injury Disaster Relief Program</u>

      EIDL loans are unsecured, low-interest, forgivable loans to small businesses, renters and homeowners in regions affected by declared disasters, which Congress created in the Coronavirus Aid, Relief and Economic Security ("CARES") Act to provide emergency financial

assistance against the economic effects of the COVID-19 pandemic. PSR ¶ 4. Specifically, the CARES Act authorized the United States Small Business Administration ("SBA") to provide an EIDL of up to $2 million to eligible small businesses that experienced substantial financial disruption due to the COVID-19 pandemic. Id. In addition, the CARES Act authorized the SBA to issue forgivable advances of up to $10,000 to qualifying small businesses within three days of applying for an EIDL. Id. The advances did not have to be repaid, but EIDLs are subject to repayment and interest. Id.

In order to obtain an EIDL and/or advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees it had as of January 31, 2020, gross revenues for the twelve-month period preceding the disaster and cost of goods sold in the twelve-month period preceding the disaster (the "Relevant Period"). Id. ¶ 5. In the case of EIDLs for COVID-19 relief, the twelve-month period was that preceding January 31, 2020. The applicant was also required to electronically certify that all of the information in the application was true and correct. Id.

EIDL applications were submitted directly to the SBA through an online portal and processed by the SBA with support from a government contractor. Id. ¶ 6. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about the number of employees, gross revenues and cost of goods sold for the Relevant Period, as described above. Id. Any funds issued under an EIDL and any EIDL advances were issued directly by the SBA. Id. EIDL funds could be used for payroll expenses, sick leave, production costs and business obligations, such as debts, rent and mortgage payments. Id.

### B.     The Defendant Fraudulently Obtained EIDL Funds

As outlined above, in April 2020, the defendant submitted an SBA application in the name of Innovation, a limited liability corporation he co-owned with co-defendant Pena. See PSR ¶ 18. The application falsely claimed that Innovation had 13 employees, gross revenues of $3,179,651 and $1,849,700 in cost of goods sold during the Relevant Period. See id. ¶ 19. While Innovation carries out some business, New Jersey Department of Labor records revealed that Innovation had not reported having had an employee since 2016 and Internal Revenue Service ("IRS") records revealed that Innovation had not filed a tax return for 2019. Id. On June 12, 2020, the SBA issued a $150,000 loan, distributing $149,900—the loan amount minus a $100 processing fee—to Innovation's business checking account, which the defendant and co-defendant Pena controlled. See id. ¶ 20.

Just three months later, in July 2020, the defendant submitted an SBA application in the name of SVC, an entity for which he was the owner and chief executive officer. Id. ¶ 15. The application falsely claimed that SVC had 26 employees, gross revenues of $839,000 and $560,000 in cost of goods sold during the Relevant Period. Id. ¶ 16. In reality, SVC was not a functioning entity. The IRS confirmed that SVC had never filed a tax return since its formation in 2014, including for 2019. Id. On August 4, 2020, the SBA issued a $139,500 loan, distributing $139,400—the loan amount less the $100 processing fee—to the defendant's personal bank account that was shared with his ex-wife. Id. ¶ 17.

Finally, in August 2020, the defendant submitted an SBA application in the name of Orlando Sanay, a sole proprietorship. Id. ¶ 21. The application falsely claimed that this entity had 13 employees, gross revenues of $950,000 and $654,000 in cost of goods sold during the Relevant Period. Id. ¶ 22. New York Department of Labor records confirmed that the entity had never reported having any employees and the IRS confirmed that the defendant's personal tax return, which should have included revenue for this entity, did not reflect revenue consistent with the application. Id. On August 28, 2020, the SBA issued a $148,000 loan, distributing $147,900—the loan amount minus a $100 processing fee—to the defendant's personal checking account. Id. ¶ 23. In total, the defendant obtained $437,200 through the submission of fraudulent EIDL loan applications.

On June 10, 2021, the defendant and four co-conspirators were arrested and arraigned on a complaint, in the Eastern District of New York, charging each defendant with conspiracy to commit wire fraud for their participation in a conspiracy to fraudulently obtain EIDL funds. See United States v. Sanay et al., 21-CR-496 (RJD). On September 22, 2021, the defendant and four co-conspirators were indicted for conspiracy to commit wire fraud, conspiracy to commit theft of public funds, in violation of Title 18, United States Code, Section 371, and one count each for wire fraud, in violation of Title 18, United States Code, Section 1343. Id. On November 4, 2021, Pena was separately indicted for conspiracy to commit wire fraud. United States v. Pena, 21-CR-560 (RJD).

On June 29, 2022, the defendant pleaded guilty before the Honorable Marcia M. Henry, United States Magistrate Judge, to conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. See PSR ¶ 1. A copy of the change of plea hearing transcript is attached hereto as Exhibit A. At the change of plea hearing, Judge Henry recommended that the Court accept the defendant's guilty plea. Ex. A at 29:14-16.

II.     Applicable Law

The Supreme Court has explained that a "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration, and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the court] may not presume that the Guidelines range is reasonable. [The court] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Specifically, 18 U.S.C. § 3553(a) requires that, in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

3

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; [and]
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

III.   Analysis

    A.   Sentencing Calculation

The government respectfully submits that the following Guidelines calculation, which is the same as the government's estimated calculation in the plea agreement, is correct:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §2B1.1(a)) | | 7 |
| Plus: | Loss more than $250,000[1] (U.S.S.G. §2B1.1(b)(1)(G)) | +12 |
| Less: | Minor participant (U.S.S.G. §3B1.2(b)) | -2 |
| Less: | Acceptance (§3E1.1(a) and (b)) | <u>-3</u> |
| Total: | | <u>14</u> |

Based upon a Criminal History Category I, as is set forth in the PSR, see PSR ¶ 78; the applicable Guidelines range for the defendant is 15 to 21 months' imprisonment. See U.S.S.G. § 5A.

In contrast to the government's estimate, the PSR does not provide a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2. See PSR ¶ 69. Accordingly, the PSR sets forth an

---

[1] This loss figure is based on the total amount of the EIDL loans that were reasonably foreseeable to the defendant, the $427,200 in loans he obtained, which is less than the total amount of the EIDL loans obtained during the overall scheme, roughly $1.5 million.

4

adjusted offense level of 16 and a Guidelines range for the defendant of 21 to 27 months' imprisonment.  Id. ¶¶ 75, 107.

Based on the evidence collected during the government's investigation, and the facts set forth above and in the PSR, the government believes that a two-level reduction for a minor participant would be appropriate.  See U.S.S.G. § 3B1.2(b).  As described above and in the PSR, the defendant participated in a scheme that involved at least six other participants.  Although the defendant was aware of misconduct carried out by Pena, the evidence does not establish that he was aware of the broader scheme.  Nor does it establish that the defendant played a broader role in planning or organizing the scheme.  As the PSR notes, "[h]e did not exercise any decision-making authority within the scheme or supervise the conduct of any co-conspirators, but he submitted EIDL applications on his own and personally profited from his involvement."  PRS ¶ 49.  He therefore is, in the government's view, less culpable than the average co-defendant who recruited additional participants and/or submitted loans on behalf of other individuals.

Nonetheless, the government submits that, if the Court were to determine that the defendant is ineligible for a mitigating role adjustment, then the PSR's calculation of the adjusted offense level and Guidelines range is correct.

B.      A Sentence of 15 to 21 Months Is Appropriate

The government respectfully submits that a sentence of 15 to 21 months—which is the Guidelines range the government estimated in the defendant's plea agreement—is appropriate in light of the § 3553(a) sentencing factors.

The defendant joined with others to defraud a vital public aid program, on three separate occasions, during a national crisis—pocketing the largest portion of fraudulently obtained EIDL funds among his co-conspirators through the use of three business entities he controlled.  His actions warrant commensurately significant consequences, both due to the seriousness of the offense and as a general deterrent to send a clear message to the broader public that taking advantage of a national emergency to enrich oneself at public expense is not tolerated.  The COVID-19 pandemic was among the direst of public health crises in American history and it had profound economic ramifications.  The defendant's exploitation of the crisis not only cost the government time and money, but it also diverted funds that could have been used the way EIDL funds were intended: to assist struggling businesses and individuals, and to keep people employed.  Instead, the defendant took money out of the hands of qualified recipients that was meant to keep workers in their jobs, businesses open and the economy running.  The defendant's actions were driven by his desire for personal financial gain, and his selfish and destructive conduct, which through the diversion of relief money caused direct harm to a vulnerable public, demands serious punishment.

[text redacted]



A custodial sentence of 15 to 21 months would adequately punish the defendant for the instant offense, deter future criminal behavior, and send a message of deterrence to the public. a sentence within the Guidelines range contemplated in the defendant's plea agreement is appropriate considering the amount the defendant profited in comparison to the other co-defendants. Further, he is differently situated that one of his co-defendant's with the same Guidelines range in that the co-defendant made full restitution before being charged. A sentence of 15 to 21 months would be sufficient but not greater than necessary to achieve the goals of sentencing.

    IV.    <u>Request for Partial Sealing</u>



V.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 15 to 21 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:       /s/
Garen S. Marshall
Assistant U.S. Attorney
(718) 254-6569

Patrick J. Campbell
Trial Attorney
(202) 262-7067

cc:    Clerk of the Court (RJD) (by E-mail)
       Ramsey Hinkle, Esq. (by E-mail)
       Paul Hugel, Esq. (by E-mail)